Alwart Bros. Coal Co., Plaintiff—Appellee, v. Pittsburgh Fire Insurance Company of Pittsburgh, Pennsylvania, Defendant. Matthew H. Taggart, Insurance Commissioner, etc., Intervening Petitioner, Appellant.

Gen. No. 33,123.

362

Opinion filed May 29, 1929.

SLAYMAKER, TURNER, MERRELL, ADAMS & LOCKE, for appellant; LOUCKS, ECKERT & PETERSON, of counsel.

JOHN A. McKEOWN, for appellee.

MR. JUSTICE WILSON delivered the opinion of the court.

Matthew H. Taggart, Insurance Commissioner of Pennsylvania and Statutory Liquidator of the Pittsburgh Fire Insurance Company of Pittsburgh, Pennsylvania, as intervening petitioner, brings this appeal to reverse a finding and judgment of the municipal court of Chicago, in favor of Alwart Bros. Coal Co. and against Pittsburgh Fire Insurance Company of Pittsburgh, Pennsylvania.

The suit grows out of a loss by fire sustained by the plaintiff, a resident of Illinois, March 28, 1927, and as a result of which an action was brought to recover upon a policy of insurance issued by the defendant company covering the loss in question. A summons was returned not found as to the defendant company, but a garnishee summons was served upon Joseph C. Knight, trading as Joseph C. Knight & Company, and the garnishee answered, admitting funds in his hands belonging to the defendant, in excess of the amount of the claim.

The defendant was then served by publication.

The intervening petitioner filed his special appearance stating that the Pittsburgh Insurance Company had been dissolved May 17, 1927, by the Court of Common Pleas of Dauphin County, Pennsylvania; that he was the statutory liquidator of that State, under a statute creating that position, and as such vested with

the title to all property, rights of action and contracts of the insurance company; that the suit was started subsequent to the dissolution of the defendant company and his appointment, and prayed that the writ, together with the return of the bailiff, be quashed.

Upon the hearing, petitioner introduced in evidence exemplified copies of an Act of the General Assembly of the Commonwealth of Pennsylvania entitled, "An Act relating to Insurance and establishing an Insurance Department, Approved May 17, 1921," which provided that upon the dissolution of an insurance company by a decree of a court of Pennsylvania, the Insurance Commissioner should carry on the liquidation of the company and be vested by operation of law "with the title to all of the property, contracts and rights of action of said company." Proof was introduced showing that the report of loss was sent to the office of the defendant June 30, 1927, and came into the hands of petitioner thereafter; that petitioner informed plaintiff that defendant company was dissolved and requested plaintiff to file its claim.

A default was taken as against the defendant insurance company and the cause tried on the issue raised by the intervening petition. The court overruled the plea to the jurisdiction, but permitted the special appearance to stand as a general appearance and granted leave to petitioner to become a party claimant to the fund in the hands of the garnishee.

The court entered a finding in favor of the plaintiff for $817.58, together with costs and entered judgment on the finding.

On a motion for a new trial petitioner presented an affidavit in support of his motion setting up newly discovered evidence to the effect that the Pittsburgh Fire Insurance Company was licensed to do business in Illinois and had appointed an attorney in fact for service in the State of Illinois, but as this evidence, if

any such, was a matter of record, it was easily ascertainable before trial and therefore not error on the part of the trial court to refuse the motion for the reasons stated in the affidavit.

The question for consideration is whether or not the statute of the State of Pennsylvania, vesting the title to the property of the Pittsburgh Fire Insurance Company in the statutory liquidator of Pennsylvania, together with the order of the Court of Common Pleas of Dauphin County, Pennsylvania, dissolving the corporation, are binding upon creditors of that company, residents of the State of Illinois, or whether their effect is confined to the State of Pennsylvania.

It is unquestioned that by voluntary assignment a person or corporation can convey its title to its property, and it is unquestioned that by an involuntary assignment by operation of law, the title to property of an individual or a corporation may be committed to a trustee for the purpose of liquidating the assets of that person or corporation for the benefit of creditors. There is no question raised but that by either an involuntary or voluntary assignment for the benefit of creditors, a trustee appointed for the purpose of collecting the assets has a right to be heard in the State other than that in which the assignment is made. Where, however, a trustee or receiver of the assets of such an individual or such a corporation undertakes to represent his assignee in a State other than where the assignment was made, a different question has arisen where domestic creditors have obtained liens by reason of attachment, garnishment or otherwise on property located at the domicile of the creditor and outside of the State where the trustee or receiver was appointed and authorized to act.

It may be stated as a general rule that creditors have a preferential right in their own State as against trustees and receivers appointed in a foreign jurisdiction under an involuntary assignment. It is urged, how-

ever, that in view of the fact that the intervening petitioner in the case at bar was appointed by virtue of a statute of Pennsylvania that, therefore, the courts of this State, by virtue of the comity existing between the various States and the full faith and credit provision of the Federal Constitution, should give effect to that statute and recognize the right of the Pennsylvania liquidator to become possessed of all the right, title and interest of the Pittsburgh Fire Insurance Company in and to all property, contracts and choses in action wherever situate, as paramount to that of domestic creditors.

Counsel rely upon the case of *Martyne v. American Union Fire Ins. Co.*, 216 N. Y. 183. The court in its opinion in that case says:

"The rule in this state seems to be so thoroughly established that the title of an assignee or receiver under involuntary or bankruptcy proceedings in a foreign state will not be upheld as against an attachment obtained and served by a resident of this state, that perhaps it should not be changed except by an act of the legislature.

"To hold, however, in this case that the title which vested by the statutes of Pennsylvania in the insurance superintendent of that state as a statutory liquidator does not extend to property in this state as against an attaching creditor here, would be to extend the rule which permits a local creditor to ignore the laws of a foreign state. We are of the opinion that the plaintiff and those from whom he received assignments of claims against the dissolved corporation have no equity that should prevent enforcing the general rule of comity in this case."

There is, however, a well-settled line of cases holding to the effect that the rights of a statutory liquidator, in and to property coming into his possession by reason of the dissolution of a corporation, does not extend beyond the confines of the State creating that

statutory office and refusing to extend the rule as against domestic creditors. In this State the courts have refused to recognize the rule adopted in the case of *Martyne v. American Union Fire Ins. Co., supra.*

An early case in this State is *Rhawn v. Pearce,* 110 Ill. 350. The facts in that case are very similar to those involved in this proceeding. In that case it appears that an action in attachment was brought against one John Landenberger, a resident of Pennsylvania. The garnishee in that proceeding admitted that it owed Landenberger and a judgment was rendered in that case in favor of Pearce. Subsequently a bill of interpleader was filed on behalf of certain trustees appointed in accordance with the statute of Pennsylvania, under which statute the trustees qualified and became vested with the title to all of the assets of Landenberger. The Supreme Court of this State in its opinion in the *Rhawn case, supra,* quotes from Story on Conflict of Laws, and says:

" 'There is a marked distinction between a voluntary conveyance of property by the owner and a conveyance by mere operation of law in cases of bankruptcy *in invitum.* Laws can not force the will, or compel any man to make a conveyance. In place of a voluntary conveyance of the owner, all that the legislature of a country can do, when justice requires it, is to assume the disposition of his property *in invitum.* But a statutable conveyance, made under the authority of any legislature, can not operate upon any property except that which is within its own territory.' . . .

"Much has been said in the argument in reference to the *situs* of this debt, and it is contended that its *situs* was the residence of Landenberger in Philadelphia, to whom it was payable. Whether the debt was constructively within the State of Pennsylvania or not, at the time the insolvency proceedings were instituted, we do not regard of any particular moment. The parties owing the debt were residing in this State.

The fund was here, and was liable, under the laws of this State, to the process of attachment, and the trustees in the State of Pennsylvania could only take, as declared by Story, subject to the remedies provided by the laws where the fund had an actual existence."

This case has been approved and followed by the Supreme Court of this State in a very recent decision entitled, *Illinois Trust & Savings Bank v. Northern Bank & Trust Co.,* 292 Ill. 11. The court in its opinion quotes *in extenso* from the case of *Rhawn v. Pearce,* cited, and says in its opinion, among other things:

" 'The most convenient and practical rule is, that statutable assignments, as to creditors, shall operate intra-territorially, only. If our citizens conduct themselves according to our laws in regard to the property of their debtors found within our jurisdiction, it is reasonable that they should reap the fruits of their diligence and not be sent to a foreign country to secure such a dividend of their debtor's effects as the foreign laws allow'; and the conclusion reached was: 'The fund was here, and was liable, under the laws of this State, to the process of attachment, and the trustees in the State of Pennsylvania could only take, as declared by Story, subject to the remedies provided by the laws where the fund had an actual existence.' ''

This rule has ample support in other jurisdictions. *Schoenwald v. M'Donald,* 5 Alaska 442; *Security Trust Co. v. Dodd, Mead & Co.,* 173 U. S. 624; *Catlin v. Wilcox Silver-Plate Co.,* 123 Ind. 477.

From a review of the decisions of this State, we are of the opinion that it is the settled policy to protect the rights of resident attaching creditors as against foreign receivers or trustees, even though appointed by statute of another State.

For the reasons stated in this opinion the judgment of the municipal court is affirmed.

*Judgment affirmed.*

HOLDOM, P. J., and RYNER, J. concur.